UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

SHAUNTA WEATHERALL

CIVIL ACTION NO. 05-1617

versus

JUDGE HICKS

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

**REFERRED TO:**
**MAGISTRATE JUDGE HORNSBY**

# MEMORANDUM RULING

**Introduction**

Shaunta Weatherall ("Plaintiff") applied for disability benefits based primarily on complications related to severe scoliosis and depression. Plaintiff, who has a tenth grade education and no prior work experience, was 23 years old at the time of her hearing before ALJ Larry J. Butler. The ALJ concluded that Plaintiff was not entitled to benefits because she retained the residual functional capacity ("RFC") to perform unskilled work at the light exertional level that does not require frequent bending, and the Medical Vocational Guidelines and Social Security Ruling 85-15 indicate that there are a significant number of jobs in the relevant economies available to such a person.

Plaintiff complains on appeal that the Commissioner's decision is not supported by substantial evidence. She particularly attacks the conclusions that her mental impairments were not severe, that she was not credible with respect to her complaints of pain, and that the Guidelines could be employed (despite the mental problems and pain that Plaintiff contends

are significant non-exertional impairments). Both parties filed a written consent to have a United States Magistrate Judge conduct all proceedings in this case. Docs. 5 & 6. After the case was transferred to this court from the Western District of Arkansas, the case was automatically referred to the undersigned pursuant to the standing order of this court for cases in which the parties have filed such consent. For the reasons that follow, the Commissioner's decision to deny benefits is affirmed.

**Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**The ALJ's Decision**

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003). He found that Plaintiff did not engage

in substantial gainful activity (step one) during any relevant time and that she suffered from scoliosis, status-post remote fusion surgery, which was a severe impairment (step two) but not so severe as to meet or equal the requirement of a listing (step three) that would result in an automatic finding of disability. The ALJ rejected a suggestion that Plaintiff's depressive disorder, anxiety disorder or pain disorder were severe impairments. The ALJ next found that Plaintiff had an RFC to perform unskilled work at the light exertional level that does not require frequent bending.

Plaintiff did not have any past relevant work (step four) within the meaning of the regulations, so the ALJ turned to the step five inquiry of whether Plaintiff could perform the demands of other jobs that exist in the regional or national economy. Rule 202.17 of the Guidelines would indicate that a person of Plaintiff's age, education and work experience was not disabled if the person had the capacity to perform a full range of light work. The ALJ recognized that strict application of the rule was not possible because Plaintiff had non-exertional limitations (such as the inability to frequently bend), but he determined that Social Security Ruling 85-15 indicated that those limitations did not significantly erode the number of available jobs. Accordingly, Plaintiff was deemed not disabled.

**Medical Records**

Plaintiff was diagnosed at a young age with infantile scoliosis. She was treated at the Texas Scottish Rite Hospital for several years and wore various braces to treat the condition. Physicians sometimes expressed doubt that the child's mother was requiring her to wear the

brace as prescribed, and the child was not always brought back for visits as directed. Plaintiff underwent surgery in 1990 at the Shriners Hospital in Shreveport. Several more years of braces and other treatment followed. When Plaintiff was 17, seven years after her surgery, Plaintiff's physician opined that she was far enough post-operative and asymptomatic enough that she could be discharged from the system. Tr. 140.

In November 2001, about four years after Plaintiff was discharged from the Shriner's system, she began visiting Dr. Clifton Salmon. She complained of chronic pain from her scoliosis, pain in her left foot, and pain in both legs. Dr. Salmon diagnosed radicular back pain and low complexity. He prescribed Naprosyn, Lortab and Z-Pack. Plaintiff was directed to return to the clinic in one month for a follow up. Tr. 263.

Plaintiff did not return until about six months later, in May 2002. She again complained of chronic low back pain related to surgery from her scoliosis. She also complained of anxiety and depression and reported that she had been on Prozac. (The source of the prescription for that medication is not apparent from the record.) Dr. Salmon noted that Plaintiff's mood was depressed. He diagnosed lumbar degenerative joint disease with post-traumatic arthritis, anxiety and depression. He provided samples of Celebrex and Prozac and directed Plaintiff to return in one month for a follow up. Tr. 263.

Before Plaintiff returned to see Dr. Salmon, she underwent a consultative examination by Dr. Thomas E. Staats in August 2002. Dr. Staats, a clinical neuropsychologist, found that Plaintiff's social interaction was marginal and that her persistence and adaptation were poor.

Her thinking appeared adequate in regard to content and reality testing, but with notable somatic fixation. His prognosis was guarded. He concluded that Plaintiff "does not appear to have severe enough psychological symptoms to impair her from occupational functioning by themselves, though she has sufficient symptoms if added to any significant physical impairment determined upon medical review." His diagnosis was depressive disorder (not otherwise specified), generalized anxiety disorder, and pain disorder associated with both psychological factors and a general medical condition. Tr. 264-265.

The next month, September 2002, Plaintiff received a consultative evaluation from Dr. E. C. Simonton, an orthopedic physician. Dr. Simonton conducted a physical examination that focused on Plaintiff's problems associated with her scoliosis and surgery. He concluded that Plaintiff "should not attempt work requiring frequent bending or lifting in excess of 25 lbs." He added that, because of Plaintiff's small stature, she should not even attempt to lift greater amounts. Tr. 284-85.

Plaintiff returned to see Dr. Salmon a couple of weeks later. She reported to him that the Celebrex was not helping her back and the Prozac was not helping her anxiety. She reported mood swings with frequent episodes of irritability. Dr. Salmon changed Plaintiff's medications and suggested a one month followup. Tr. 289.

Plaintiff returned one month later and reported that her "anxiety depression is doing much better" with the Effexor, the drug that Dr. Salmon had prescribed at the last visit. She

also stated that Bextra was helping her back some, but she still complained of severe pain. The medications were continued. Tr. 289.

Plaintiff returned about a month later and reported that, since her last visit, Dr. Anglin had injected her back for pain relief. The visit focused on the back problems and a bronchitis issue, and there was no mention of any mental problems. Tr. 289. A state agency physician reviewed the medical records and completed a Psychiatric Review Technique Form in August 2002. Tr. 266, 280. It will be discussed below.

**Testimony**

Plaintiff testified at the hearing that, when she was about 15, several boys groped her at school and tried to rape her. Plaintiff began attending an alternative school soon afterward, but she dropped out. She gave birth to a son about two years before the hearing. Plaintiff testified that, through other government benefits obtained by her and her son, she was able to purchase a small mobile home that is right behind her mother's home.

Plaintiff testified that physicians told her not to lift more than five pounds (but there is no such reference in the current record). She said she could lift a gallon of milk and carry it a little way, but her back and arms would begin to hurt. She said she could not bend, stoop, push or pull, but she could climb stairs and sit without much problem. Standing for more than thirty minutes was considered difficult.

Plaintiff said her mother fixes her hair because it is too painful for her. Plaintiff sometimes applies her own makeup. She can do the dishes and sweep a little, but she cannot

vacuum or cook. Plaintiff's mother takes care of Plaintiff's son. Plaintiff said she could grocery shop about once a month and attends church once or twice a week. She described her back pain as worse now than before her surgery.

Plaintiff said she could not work because her back hurts and she is always depressed. She added that she was often nervous or panicky, and her inability to hold and care for her son in a traditional manner was very depressing.

**Mental Impairments**

Plaintiff asserts that the ALJ erred when he did not find that her mental impairments were severe. At step two, deciding whether a claimant suffers from severe impairments, the Fifth Circuit holds that an impairment "can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985); Loza v. Apfel, 219 F.3d 378, 390-92 (5th Cir. 2000).[1]

The ALJ discussed at length the medical evidence relevant to Plaintiff's claims of anxiety and depression. He acknowledged Dr. Salmon's diagnosis but pointed out that Plaintiff reported that she was feeling much better once her medication was adjusted. (The court notes that Plaintiff did not complain, at all, of mental or emotional problems at the final

---

[1] Plaintiff does not complain that the ALJ applied an improper legal standard at step two, and the ALJ's reference to Plaintiff's back problems as being "more-than-minimally" restrictive indicates that he did apply the proper standard at that step.

documented visit to Dr. Salmon.) The ALJ also acknowledged Dr. Staats' report that Plaintiff did not appear to have severe enough psychological symptoms to, alone, impair her from occupational functioning, but the ALJ discounted even that conclusion because the consultative examination occurred prior to the (apparently) successful change in Plaintiff's medication.

The regulations provide in C.F.R. § 404.1520a that there are four broad functional areas in which the agency will rate the degree of a claimant's functional limitation caused by an alleged mental impairment. Those areas are activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. The regulation is not mechanical, but it provides in Section 404.1520a(d)(1) that if the limitations in the first three areas are rated as none or mild, and a none rating applies in the fourth area, the agency will generally conclude that the impairment is not severe.

A state agency physician reviewed the medical records (but did not examine Plaintiff) and indicated that the degree of limitation in those areas was moderate, mild, and none, respectively. The two moderate indications from the state agency psychologist indicate a slightly greater degree of limitation than described in the regulation as generally indicative of non-severity, but there is no indication in the regulation that all more serious ratings must result in a finding of a severe impairment. Furthermore, the ALJ discounted the weight of the report because the agency psychologist did not have access to the treating physician's treatment notes from September 2002 that reflected Plaintiff's good response to Effexor. Tr.

116. Accordingly, the ALJ concluded that, on medication, Plaintiff's mental impairments caused only mild limitation in activities of daily living, social functioning and persistence, and he found that concentration and pace were adequate. Tr. 16.

Reasonable minds might differ, but the ALJ provided logical reasons for the weight he assigned the evidence in the record and his conclusion that Plaintiff did not have a mental impairment that, alone or in combination with others, was severe.[2] There is no evidence that Plaintiff was receiving any counseling or other mental health treatment, she reported good progress with a new medication, and her final visit to her treating physician included no complaints of mental or emotional issues. There is certainly some evidence that could support a finding that Plaintiff had a severe mental impairment, but there is substantial evidence to support the ALJ's conclusion as well. Accordingly, the court must affirm his decision.

**Credibility and Pain**

Plaintiff next complains that the ALJ incorrectly assessed her credibility with respect to her complaints of pain and other limitations. An ALJ's findings on credibility of the claimant and the debilitating effect of subjective symptoms, based on his first-hand observation of the claimant, are particularly within his province and entitled to judicial

---

[2] Plaintiff complains that the ALJ did not properly consider the combined effect of the impairments. See Memorandum at Doc. 11, p. 18. The ALJ did state, however, in his description of the second step of the process that he would determine whether Plaintiff had a "impairment or combination of impairments that is severe." Tr. 14.

deference. Johnson v. Bowen, 864 F.2d 340, 347 (5th Cir. 1988); Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994).

The ALJ noted that the consultative orthopedist found no pain produced by straight leg raising and other tests. (Dr. Simonton's report states: "Lumbosacral test painless.") There was also no evidence from that examination or other clinical sources of radiculopathy or significant loss of range of motion to support the degree of back pain claimed by Plaintiff. Tr. 284. Dr. Salmon diagnosed Plaintiff with radicular back pain, but the ALJ discounted that conclusion because of the lack of clinical findings to support the diagnosis. There is no indication in the records that the diagnosis came from anything more than Plaintiff's complaints.[3] The ALJ also noted that Plaintiff engaged in a variety of activities such as shopping and some housework, and she had been granted medical permission to play non-contact sports such as basketball and volleyball several years earlier when she was in high school.

After considering all of the evidence, the ALJ found that Plaintiff's subjective allegations were not fully credible. Tr. 17. Once again, there is objective evidence that

---

[3] An impairment "must be established by medical evidence consisting of signs, symptoms and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508. Laboratory findings are "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." Signs "are anatomical, physiological, or psychological abnormalities which can be observed, apart from [the claimant's] statements." Signs must be shown by medically acceptable clinical diagnostic techniques. Finally, symptoms are the claimant's own descriptions, but "statements alone are not enough" to establish an impairment. 20 C.F.R. § 404.1528.

Plaintiff suffered from scoliosis, which could produce back pain of various degrees, but the ALJ found that Plaintiff suffered a lesser degree of pain than she claimed. His conclusion is supported by substantial evidence in the form of those matters he referenced, as well as the lack of any prescription for serious pain medication. Given the deference afforded an ALJ's credibility decisions and the record evidence discussed above, the court finds that the ALJ's decision of this issue must be affirmed.

**Use of Guidelines**

Plaintiff complains that the ALJ was not permitted to use the Guidelines because Plaintiff suffered from significant non-exertional impairments in the form of her mental problems and pain. The Commissioner may rely exclusively on the Guidelines if (1) the claimant suffers only from exertional impairments or (2) the claimant's nonexertional impairments do not significantly affect his RFC. Id. § 404.1569; Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987). If nonexertional impairments do significantly affect the plaintiff's RFC, the Commissioner may look to the Guidelines for guidance but must also look to expert vocational testimony or other similar evidence to meet his burden of proving that such jobs exist. Fraga, supra.

The Fifth Circuit links the definition of a "severe" impairment at step two to the determination of whether a non-exertional impairment significantly affects the claimant's RFC such that reliance solely upon the Guidelines at step five would be inappropriate. Hearne v. Barnhart, 111 Fed. Appx. 256 (5th Cir. 2004). The court above determined that

the ALJ's decision with respect to the alleged mental impairment is supported by substantial evidence and safe from judicial revision. The ALJ did not specifically address pain as a step two issue, but he did address it in other aspects of his opinion. His resolution of the issue, based largely on the credibility issues discussed above, is supported by substantial evidence. The ALJ need not call a vocational expert every time there is any claim of a non-exertional impairment. The ALJ in this case was within his discretion to discount the assertions of mental problems and pain as less than significant impairments of the ability to do light work, thus permitting the use of the Guidelines to meet the Commissioner's burden at step five. Accordingly, judgment will be entered affirming the Commissioner's decision to deny benefits.

THUS DONE AND SIGNED in Shreveport, Louisiana on this 6th day of October, 2005.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE